IN INTEREST OF D. H.: D. H., Plaintiff in error, v. STATE, Defendant in error.

*No. 75–257. Argued December 2, 1976.—Decided March 1, 1977.*
(Also reported in 251 N. W. 2d 196.)

For the plaintiff in error there were briefs and oral argument by *Howard B. Eisenberg*, state public defender.

For the defendant in error the cause was argued by *James H. McDermott*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

ABRAHAMSON, J.  The order reviewed in this case was entered by the circuit court affirming an order of the county court waiving juvenile jurisdiction over D. H., a juvenile.

On February 17, 1975, a "Petition for Determination of Status" was filed with the Kenosha County Juvenile Court alleging that D. H. was delinquent in that he had violated secs. 943.32(1)(b) and 939.05, Stats., which define the offense of being a party to the crime of robbery. The Petition for Determination of Status recites that at approximately 7:20 p.m. on February 13, 1975, D. H. and three others, two of whom were then over the

age of eighteen, drove to Fasulo's Grocery, located in the city and county of Kenosha; that D. H. and two of the others entered the store, leaving one person to wait in the car; that D. H. stated to Sam Fasulo, owner of the store, that "my friend has a gun in his pocket, so give me the money;" that Fasulo asked to see the gun, whereupon D. H. stated to Fasulo "Give me your money or I'll bust you in the mouth, and don't push any buttons;" and that Fasulo then directed an employee to hand over to D. H. currency contained in the cash register. D. H. took the money, which amounted to $35, and the group then returned to the car. The petition further alleges that D. H.'s date of birth is December 1, 1958, which would make his age at the time of the alleged offense (and the filing of the Petition for Determination of Status) sixteen years and two and one-half months. He turned eighteen on December 1, 1976.

A "Petition for Waiver" was also filed on February 17, 1975, alleging that "it would be contrary to the best interests of the child or of the public to dispose of the issues in the juvenile court," and praying for an order waiving juvenile jurisdiction over D. H. and referring the matter to the district attorney for appropriate further proceedings. Other than the phrase just quoted the petition for waiver does not specify any reasons why waiver of jurisdiction was being sought.

On that same day, February 17, 1975, a hearing was held on the waiver petition before the juvenile court. Present were an assistant district attorney, D. H., D. H.'s mother, and D. H.'s court-appointed counsel. The assistant district attorney and counsel for D. H. argued very briefly their respective positions on the waiver question, but no testimony was taken. D. H.'s counsel informed the court that he had been informed that D. H. had no prior criminal or juvenile record and that he was unemployed. D. H.'s mother told the court that D. H. had dropped out of school, apparently only a short time before the alleged robbery, and that he spent most of his time at home.

The juvenile court ruled from the bench that it would grant the petition to waive jurisdiction over D. H. The court mentioned the following factors in announcing its decision:

(1) D. H. was not going to school and was unemployed.

(2) The offense charged was a serious one, carrying a maximum possible sentence of ten years' imprisonment.

(3) D. H. allegedly acted in concert with adults over the age of eighteen.

(4) The time remaining for juvenile jurisdiction, approximately one year and ten months, was insufficient to be commensurate with the conduct alleged in the Petition for Determination of Status which had "all of the characteristics of adult criminal conduct," in the court's view.

The court stated that for the purpose at hand it was required to assume that the allegations of the petition setting forth the crime were true.

A written "Order Granting Petition for Waiver" was entered on February 17, 1975, in which the court found that "the best interests of the minor (and/or of the public) will be best served for the court to waive jurisdiction," and set forth as the basis for this finding factors (1) through (3) listed above and "other reasons more specifically stated on the record." This order was appealed to the circuit court pursuant to sec. 48.47, Stats. On March 14, 1975, the circuit court rendered its memorandum decision affirming the order waiving juvenile jurisdiction over D. H., and on March 18, 1975, an order of affirmance was entered. This is the order presently here for review.

Three issues are presented:

1. This court's jurisdiction over the appeal:

A. Was the order of the juvenile court waiving jurisdiction over D. H. appealable to the circuit court under sec. 48.47, Stats.?; and

B. Was the circuit court's order affirming the county court's order appealable to this court?

2. The procedure at the waiver hearing:

A. Did the petition filed with the juvenile court seeking waiver of juvenile jurisdiction allege sufficient facts to support such a request and to comply with due process of law?; and

B. Was the prosecutor required to adduce competent, admissible evidence at the waiver hearing to support the petition for waiver of juvenile jurisdiction?

3. The merits of the decision on waiver: Did the juvenile court abuse its discretion in waiving its jurisdiction?

## JURISDICTION

The transfer of the juvenile to the adult criminal process is a grave step, and there should be a way for the juvenile to .obtain immediate review of the decision.

In Wisconsin the order waiving juvenile jurisdiction is entered pursuant to sec. 48.18, Stats.:

". . . Except as provided in s. 48.17, the criminal and civil courts shall have jurisdiction over a child 16 or older who is alleged to have violated a state law or a county or municipal ordinance only if the juvenile court judge deems it contrary to the best interest of such child or of the public to hear the case and enters an order waiving his jurisdiction and referring the matter to the district attorney, corporation counsel or city attorney, for appropriate proceedings in a criminal or civil court. In that event, the district attorney, corporation counsel or city attorney of the county or municipality shall proceed with the case in the same manner as though the jurisdiction of the juvenile court had never attached."

The right to appeal from proceedings in the juvenile court is governed by sec. 48.47, Stats.:

". . . Any person aggrieved by an adjudication of the county court under this chapter and directly affected thereby has the right to appeal to the circuit court of

the same county within 40 days of the entry of the order in the manner in which appeals are taken from judgments in civil actions. No undertaking shall be required on such appeal. The order of the county court shall stand, pending the determination of the appeal, but the circuit court may upon application stay such order. The appeal shall be on the record which the county court shall make and keep of the entire proceedings. Appeal from an order granting or denying an adoption under s. 879.27 and from any county court review under s. 48.64(4)(c) shall be to the supreme court."

An order entered in waiver proceedings might fit within sec. 48.47, Stats., as an order of the juvenile court, rather than the judge, and might fit within the general concept of adjudication, but not altogether comfortably. And, although we might further hold that the circuit court's order was appealable to this court under sec. 274.33, Stats. (now renumbered sec. 817.33, Stats.), this appellate route is not an adequate remedy. In order for a child to be waived from juvenile to adult court he must have attained the age of sixteen. Sec. 48.18, Stats. Thus in waiver situations, we are dealing with children who are between the ages of sixteen and eighteen. If all the steps for an appeal to this court are complied with, it is likely that from the time of the determination of waiver until this court's hearing of the case, at least two years will elapse. In this case the alleged offense took place on February 13, 1975; the waiver was ordered on February 17, 1975; the circuit court decision on waiver was made on March 14, 1975. The case was argued in this court on December 2, 1976. D. H. was sixteen years, two and one-half months old when the alleged offense was committed and when he was first brought to juvenile court. This case moved along promptly on the over-crowded appellate docket. Yet D. H. was eighteen years of age on December 1, 1976, the day before the case was argued here. Thus if

this court would find the waiver improper, D. H. is now over eighteen years of age.

This court has reviewed juvenile waiver proceedings on review of a subsequent criminal conviction. *Mikulovsky v. State,* 54 Wis.2d 699, 196 N.W.2d 748 (1972). However, this remedy also is unacceptable due to the delays which are at present inevitable in the appellate process, and for the additional reason that once the child has been subject to trial as an adult, the confidentiality associated with juvenile proceedings has been irreparably lost. *See State ex rel. Koopman v. County Court,* 38 Wis.2d 492, 157 N.W.2d 623 (1968).

We therefore believe that even if we could find that the statutes provide an appeal via secs. 48.47 and 274.33, this appeal route is not adequate under present circumstances. Review in cases where the juvenile court has waived jurisdiction must be speedy and efficient. Legislation could establish the necessary procedures but it does not. "When an adequate remedy or forum does not exist to resolve disputes or provide due process, the courts, under the Wisconsin Constitution, can fashion an adequate remedy."[1]

In order to expedite court processes and to further justice, we fashion the following procedure to be followed (until the legislature provides otherwise) for review of

---

[1] *Hortonville Ed. Assn. v. Joint School Dist. No. 1,* 66 Wis.2d 469, 497, 225 N.W.2d 658 (1975), citing Art. I, sec. 9, Wis. Const. ("Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.") and *State ex rel. Wickham v. Nygaard,* 159 Wis. 396, 150 N.W. 513 (1915); *Wisconsin Telephone Co. v. Public Service Comm.,* 232 Wis. 274, 287 N.W. 122, 287 N.W. 593 (1939); *Huebner v. State,* 33 Wis.2d 505, 147 N.W.2d 646 (1967).

For a discussion of the appealability of the juvenile court decision to transfer jurisdiction in other states, *see* Stamm, *Trans-*

an order waiving juvenile court jurisdiction pursuant to sec. 48.18, Stats.

1. The juvenile has the right to appeal to the circuit court of the same county within forty days of the entry of the order in the manner in which appeals are taken from judgments in civil actions. The circuit court shall hear this appeal expeditiously. The appeal shall be on the record which the county court shall make and keep of the entire proceedings. No undertaking shall be required.

2. The order of the circuit court affirming the order granting waiver may be reviewed by the supreme court in its discretion upon the juvenile's application for a writ of prohibition. Wis. Const. art. VII, sec. 3.[2] The writ should be applied for within forty days of the entry of the order of the circuit court (see sec. 807.11, Stats.). If the writ is applied for, this court may determine whether the decision to waive juvenile jurisdiction constituted an abuse of discretion.[3]

3. Upon the taking of an appeal to circuit court or the filing with this court of an application for a writ of prohibition, the order of the county court shall stand pending the determination of review of the order, but the

fer of Jurisdiction in Juvenile Court, 62 Ky. L.J. 122, 176–181 (1973).

[2] Art. VII, sec. 3, Wis. Const., provides as folllows:

"The supreme court, except in cases otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state; but in no case removed to the supreme court shall a trial by jury be allowed. The supreme court shall have a general superintending control over all inferior courts; it shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and other original and remedial writs, and to hear and determine the same."

[3] For discussions of the writ of prohibition, see: State ex rel. Kowaleski v. District Court, 254 Wis. 363, 372, 36 N.W.2d 419 (1949); Drugsvold v. Small Claims Court, 13 Wis.2d 228, 108 N.W.2d 648 (1961); State ex rel. Jefferson v. Roraff, 44 Wis.2d 250, 256, 257, 170 N.W.2d 691 (1969); State ex rel. Prentice v. Milwaukee County Ct., 70 Wis.2d 230, 233–235, 234 N.W.2d 283 (1975).

circuit court or this court may upon application stay such order.

We consider this matter as properly before us.

## THE WAIVER HEARING: PROCEDURE

D. H. raises two claims to challenge the procedural validity of the juvenile court's waiver of jurisdiction over his case. He contends that the petition he received was inadequate notice because it alleges no facts to support the waiver request, and, apparently, because it came too late to constitute effective notice. He also contends that the hearing was invalid in that no "competent evidence" was introduced thereat.

D. H. relies principally on *Kent v. United States,* 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed.2d 84 (1966). This court has observed that *Kent* "is a significant decision . . . concerning the constitutional requirements of the juvenile waiver process," *In re Interest of F.R.W.,* 61 Wis.2d 193, 202, 212 N.W.2d 130 (1973), and has relied on *Kent* for the proposition that "waiver of juvenile jurisdiction is a 'critically important' portion of the criminal proceeding where a juvenile stands accused." *Gibson v. State,* 47 Wis.2d 810, 815, 177 N.W.2d 912 (1970).

At the same time, the court has indicated that *Kent* did not render juvenile proceedings subject in all respects to the rules applicable to criminal prosecutions. Due process and fair treatment are required in both classes of proceedings, but the forms thereof need not be the same. *In re D.M.D. v. State,* 54 Wis.2d 313, 317, 318, 195 N.W.2d 594 (1972); *J. K. v. State,* 68 Wis.2d 426, 430, 431, 228 N.W. 713 (1975). *Cf. State v. Gerard,* 57 Wis.2d 611, 205 N.W.2d 374 (1973). "[T]he applicable due process standard in juvenile proceedings . . . is

fundamental fairness." *McKeiver v. Pennsylvania,* 403 U.S. 528, 543, 91 Sup. Ct. 1976, 29 L. Ed.2d 647 (1971).

We believe that the basic requirements of fundamental fairness are that a hearing be held; that the child, the child's parent, guardian or other custodian, and the child's counsel be given notice of the charges against the child and the time, place and purpose of the waiver proceeding; that the juvenile be given assistance of counsel; that the juvenile's attorney be given access a reasonable time before the hearing to any reports or records regarding the juvenile considered by the court; that the juvenile be given the right to present evidence and cross-examine witnesses; and that the juvenile court not rely on secret information in making its decision and that the court state its reasons for concluding that waiver of jurisdiction is appropriate.[4]

[4] "The net, therefore, is that petitioner—then a boy of 16—was by statute entitled to certain procedures and benefits as a consequence of his statutory right to the 'exclusive' jurisdiction of the Juvenile Court. In these circumstances, considering particularly that decision as to waiver of jurisdiction and transfer of the matter to the District Court was potentially as important to petitioner as the difference between five years' confinement and a death sentence, we conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel." *Kent v. United States,* 383 U.S. 541, 557, 86 S. Ct. 1045, 16 L. Ed.2d 84 (1966).

*See also Kemplen v. Maryland,* 428 F.2d 175 (4th Cir. 1970); *Miller v. Quatsoe,* 332 F. Supp. 1269, 1276 (E.D. Wis. 1971); *United States ex rel. Turner v. Rundle,* 438 F.2d 839, 842 (3d Cir. 1971); *Davis, Rights of Juveniles: The Juvenile Justice System,* sec. 4.02 (1974); Uniform Juvenile Court Act, secs. 24, 26, and 34; Wisconsin Special Study Committee on Criminal Justice Standards and Goals, *Juvenile Justice Standards and Goals,* Standards 12.1(n) (o), 12.11(a) (b) (c) (d) (1975).

In this case D. H. received two separate petitions, on the same day, and apparently at the same time, three days after his arrest. It is true that the "petition for waiver" provided only the bare information that waiver was being sought because "it would be contrary to the best interests of the child or the public to dispose of the issues in the juvenile court," with no indication of the nature of the charges against D. H. and with no indication of the reasons underlying the quoted conclusory statement.

The accompanying "petition for determination of status" set forth the charge in great detail: The statute allegedly violated was specified; the events allegedly constituting the crime were recited at length; and the sources of the information upon which the petition was based were set forth. It is only reasonable to read the two petitions together, and so read, they clearly conveyed adequate notice of the charges against D. H., and the time, place and purpose of the proceeding. It would perhaps have been better to indicate the charges on the waiver petition itself, or to explicitly refer therein to the petition for determination of status. However, it does not appear that D. H. was or reasonably could have been misled by the failure to do so.

D. H. appears to make a distinction between being informed of the crime with which he is charged and being informed of the reasons for which waiver is being sought. Although he cites no authority supporting a right to notice of the latter character, and the cases cited above (note 4, *supra*) do not speak in such terms, it may be that in some circumstances notice of reasons for waiver going beyond the nature of the immediate crime and the general statement of the statutory grounds for waiver should be given as a matter of fairness. For example, if the prosecutor had procured witnesses, records or reports for the purpose of proving prior behavioral problems or patterns of unlawful conduct of the juvenile, and intended to rely on these matters to justify waiver of

juvenile jurisdiction, it might be unfair to take the juvenile by surprise at the time of the hearing. However, no such factors were involved in the case at bar. Other than the nature of the alleged crime, of which D. H. was apprised, the only reason for waiver advocated by the prosecutor was the fact that D. H. had dropped out of school some two months before the incident in question.

Elsewhere in this opinion we enumerate certain factors deemed relevant to the waiver decision. It would no doubt be a commendable practice to notify the juvenile as to which factors are felt to justify waiver in his particular case. However, the enumerated considerations are principally a guide, which is nonexhaustive, for the exercise of the judge's discretion. They serve to mark out areas in which evidence and argument are relevant, and as such they are available to judge, prosecutor and defense counsel alike. In respect of notice they are as a general matter distinguishable from the nature of the charges, the time, place and purpose of the proceeding, and factual matters regarding the conduct of the juvenile. The test of the adequacy of notice is fairness. Under the circumstances of this case, we find that the content of the notice received by D. H. was adequate.

It is contended that the fact that the petitions were not given to D. H. or to his counsel or to his parents until the day of the hearing rendered the notice inadequate and deprived him of the effective assistance of counsel. However, no continuance of the hearing was requested; nor did counsel make any claim of surprise or lack of opportunity to prepare. The record indicates that counsel was appointed on February 14, 1975, three days before the hearing occurred. Three days might under some circumstances be inadequate to prepare fully for a waiver hearing. However, it was certainly adequate time for counsel to ascertain the general nature of D. H.'s position by conferring with him and to prepare to the extent of knowing whether or not additional time for final prepara-

tion was required. D. H.'s counsel indicated at the hearing that he was aware of the *Kent* decision; his failure to request additional time does not appear to be the product of ignorance or neglect.

The granting of a continuance is a matter for the discretion of the court.[5] This court has indicated that failure to grant a continuance is not improper where no request therefor was made.[6] D. H.'s claims of inadequate notice must be rejected.

D. H. claims that the waiver order herein is invalid due to the absence of "competent evidence" at the hearing. By "competent evidence" D. H. apparently means sworn testimony and documentary evidence that would be admissible under the rules of evidence. D. H. cites no direct support for this position.[7]

[5] *In re Guardianship of Schmidt,* 71 Wis.2d 317, 321, 237 N.W.2d 919 (1976); *Phifer v. State,* 64 Wis.2d 24, 30, 218 N.W.2d 354 (1974).

[6] *Hansen v. State,* 64 Wis.2d 541, 550, 219 N.W.2d 246 (1974); *Ripon v. Diedrich,* 34 Wis.2d 459, 464, 149 N.W.2d 580 (1967). "This court has often stated that it does not look with favor upon claims of prejudicial error based upon the trial court's failure to act when no action is requested by counsel." *State v. Cartagena,* 40 Wis.2d 213, 222, 161 N.W.2d 392 (1968).

[7] D.H.'s position is weakened by *Kent* where the court said: "We do not agree with the Court of Appeals' statement, attempting to justify denial of access to these records, that counsel's role is limited to presenting 'to the court anything on behalf of the child which might help the court in arriving at a decision; it is not to denigrate the staff's submissions and recommendations.' On the contrary, if the staff's submissions include materials which are susceptible to challenge or impeachment, it is precisely the role of counsel to 'denigrate' such matter. There is no irrebuttable presumption of accuracy attached to staff reports. If a decision on waiver is 'critically important' it is equally of 'critical importance' that the material submitted to the judge—which is protected by the statute only against 'indiscriminate' inspection—be subjected, within reasonable limits having regard to the theory of the Juvenile Court Act, to examination, criticism and refutation. While the Juvenile Court judge may, of course, receive *ex parte* analyses and recommendations from his staff, he

The trial judge should require that·the information considered by him be trustworthy, and the judge should allow the juvenile a reasonable opportunity to demonstrate that information before him is inaccurate, unreliable, or the product of bias or animosity on the part of other persons. A juvenile has the right to present evidence himself showing that he is a suitable subject for retention in the juvenile system or contradicting ·information or evidence relied upon by the state. Moreover, where the judge receives material that would be inadmissible under the rules of evidence, and such material is claimed by the juvenile to be false, the court might, under such circumstances, require the proponent of the evidence to substantiate it with properly admissible evidence.

Testimony may of course be received at a waiver hearing, as it was in *Mikulovsky v. State*, 54 Wis.2d 699, 196 N.W.2d 748 (1972). A police officer there testified with respect to a statement given to him by the defendant. However, the court did not indicate that such testimony was required, and this court specifically rejected the contention that testimony of social workers was required to be heard on the question of a juvenile's prospects for rehabilitation and propensity for further crime. The court stated that there are situations in which such testimony is appropriate, but it is not mandatory in all cases. *Mikulovsky, supra,* 54 Wis.2d at 707, 708.

None of this is to require, as D. H. appears to argue, that before a waiver may be effectuated the prosecution must in some manner prove up, by competent evidence in the strict legal sense, some sort of prima facie case for waiver of jurisdiction.[8]

may not, for purposes of a decision on waiver, receive and rely upon secret information, whether emanating from his staff or otherwise." 383 U.S. 541, 563.

[8] This position is supported by *United States ex rel. Bombacino v. Bensinger*, 498. F.2d 875, 877, 878 (7th Cir. 1974). It was

The decision whether to waive juvenile jurisdiction in a given case is one which the legislatures of this and many other states have committed to the sound discretion of

claimed that a waiver effected in an Illinois state court was invalid because no evidence had been heard. This contention was dismissed as follows:

"There are two aspects to the argument based on the absence of an evidentiary hearing. It is first significant that the court did not refuse to hear any evidence offered on behalf of the petitioner because no such offer was made. In oral argument his counsel made certain representations which, since they were unchallenged, presumably were accepted as true by the judge. Although petitioner's guilt or innocence was in dispute, the facts concerning the juvenile's age, education, family background, and the absence of a prior record, appear to have been undisputed. We find nothing in the record to indicate that petitioner was denied the opportunity to adduce evidence relating to the transfer issue.

"At the oral argument before the juvenile judge, petitioner argued that the prosecutor should be required to introduce evidence to show probable cause that the juvenile was guilty of a criminal offense. Quite clearly, under the Illinois statutory procedure, such evidence was unnecessary. We find nothing in either the *Kent* opinion or in the concept of fundamental fairness which mandates such a hearing before the jurisdiction of the juvenile court may be waived. Of course, before an indictment can be returned, evidence of probable cause, sufficient to satisfy the grand jury, must be presented. That procedure adequately protects a person's rights; there is no constitutional requirement that a probable cause showing must be made twice."

*See* Uniform Juvenile Court Act, secs. 24 and 27. *See also Hazell v. State*, 12 Md. App. 144, 277 A.2d 639, 644 (1971); *State v. Gerard*, 57 Wis.2d 611, 618, 205 N.W.2d 374 (1973), where this court said that in a revocation of probation hearing, which is "a due-process-type hearing, all of the technical rules of evidence need not be observed. The trial judge, in the exercise of his discretion, can accept or reject the information offered as reliable or unreliable in making a proper determination." *See also Waddell v. State*, 24 Wis.2d 364, 369, 129 N.W.2d 201 (1964); *Lehmann v. State*, 39 Wis.2d 619, 629, 630, 159 N.W.2d 607 (1968); *Neely v. State*, 47 Wis.2d 300, 334–336, 177 N.W.2d 79 (1970) relating to sentencing procedures.

the juvenile court.[9] The proper exercise of discretion contemplates an informed determination reached by the demonstrated application of reason to facts and circumstances appearing in the record. Those facts and circumstances must be developed from reliable sources of information, but we are disinclined to impose upon the process a blanket requirement for formal proof. The juvenile court may inform itself in any manner it deems suitably reliable, subject to the juvenile's right to be advised of the information relied upon by the court, to supplement or contradict the information presented, to request that the court compel the state to produce as witnesses persons upon whose knowledge or opinion the state relies, and to test witnesses called by the state by cross-examination under oath. Several states that have dealt expressly by statute or rule of court with the matter of evidence at waiver hearings have similarly concluded that the application of rigid rules, including the rules of evidence, would be more likely to impair the juvenile court's ability to deal fairly with a particular problem than to lead to a just result.[10]

[9] *See* Stamm, *Transfer of Jurisdiction in Juvenile Court,* 62 Ky. L.J. 123 (1973); Mlyniec, *Juvenile Delinquent or Adult Convict—The Prosecutor's Choice,* 14 Am. Cr. L. Rev. 29 (1976).

[10] *See, for example,* Cal. Welf. & Inst'ns Code sec. 707 (Supp. 1976); Ill. Rev. Stats. ch. 37, sec. 702-7(3)(a) (1975); Kan. Stats. Annot. sec. 38–808(b) (Supp. 1976), which provides in part:

"Written reports and other materials relating to the child's mental, physical, educational and social history may be considered by the court, but the court, if so requested by the child, the child's parent or guardian or other interested party, shall require the person, persons or agency preparing the report and other material to appear and be subject to both direct and cross-examinations.";

Minn. Juv. Ct. Rule 8–6 (West 1977), which provides:

"In arriving at its reference decision, the court shall consider only data which has been formally admitted in evidence. All testimony shall be under oath and may be in narrative form. The court may admit any evidence that is material and relevant

In the instant case D. H. was not prevented from offering evidence, information or argument to the court. It appears from the record that the court considered all materials presented to it, and did not rely on any information not presented in court and subject to challenge by the defense.

The hearing could have been more thorough.[11] However, we think there was sufficient information before the court for the court to exercise its sound judicial discretion. We conclude that D. H.'s contentions grounded on the procedure by which juvenile jurisdiction was waived are without merit.

## ABUSE OF DISCRETION

Sec. 48.18, Stats., provides that the juvenile court may waive its jurisdiction when it appears that to retain jurisdiction would be "contrary to the best interest of such child or of the public."[12] This court, citing sec.

to the decision whether to refer the cause for prosecution, including hearsay and opinion evidence. The parties shall have the right to examine any person who has prepared any report admitted in evidence."

[11] We echo the sentiments expressed by Chief Judge BAZELON, *Haziel v. United States*, 404 F.2d 1275, 1282 (D.C. Cir. 1968):

"It is all too often true that appellate opinions must reflect the realization that little can be done to salvage the past. But if yesterday has forever fled, the future can and must still be cared for. The standards set forth in this decision may well do more to improve future waiver proceedings than to correct the past."

[12] This court has stated that our juvenile laws have the "benevolent purpose of improving the child's condition and not . . . punishing his past conduct." *In re Alley*, 174 Wis. 85, 91, 92, 182 N.W. 360 (1921). In *In re Winburn*, 32 Wis.2d 152, 158, 145 N.W.2d 178 (1966), it was said:

"The entire philosophy of the Children's Code is avowedly the antithesis of criminal prosecution.

" 'For the delinquent child, the aim of the court is to correct, re-educate, re-direct, and rehabilitate, rather than to punish or to

48.01(3), Stats.,[13] has held that the best interest of the child must be considered paramount in a waiver determination. *In re Interest of F.R.W.*, 61 Wis.2d 193, 201, 204, 208, 212 N.W.2d 130 (1973). This determination is addressed to the sound discretion of the juvenile court, but this court stands ready to determine whether the juvenile court judge properly exercised his discretion in waiving jurisdiction. This court, to give meaningful review, requires that a statement of the relevant facts and a statement of the reasons motivating waiver must be set forth carefully by the juvenile court judge. *State v. Gibbs*, 94 Ida. 908, 500 P.2d 209 (1972); *Atkins v. State*, 259 Ind. 596, 290 N.E.2d 441, 443 (1972).

In *Mikulovsky v. State*, 54 Wis.2d 699, 704 (n. 3), 196 N.W.2d 748 (1972), and in *In re Interest of F.R.W. v. State*, 61 Wis.2d 193, 205, 212 N.W.2d 130 (1973), this court recognized that in Wisconsin the eight criteria set forth in *Kent* are relevant in determining whether to waive jurisdiction.[14] Sec. 48.01(2), Stats.,[15] directs the

seek retribution for misdeeds.' Wisconsin Handbook for Juvenile Court Services (November, 1959), p. 2."

*Winburn* went on to discuss frankly the fact that in practice retribution as well as rehabilitation plays a role in the function of the juvenile court, and as the United States Supreme Court did in *Kent v. United States*, 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed.2d 84 (1966) and in *In re Gault*, 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed.2d 527 (1967), this court in *Winburn* rejected in large measure the former doctrine by which the supposed beneficence of juvenile courts justified gross denials of rights accorded adults charged with crime. However, we do not read *Winburn* as negating the statutory requirement that the paramount consideration in juvenile proceedings is the welfare of the juvenile. For expression of a similar view, *see Breed v. Jones*, 421 U.S. 519, 528, 529, 95 S. Ct. 1779, 1785, 44 L. Ed.2d 346 (1975).

[13] Sec. 48.01(3), Stats., provides that "the best interests of the child shall always be of paramount consideration, but the court shall also consider the interest of the parents or guardian of the child and the interest of the public."

[14] The criteria from *Kent* are as follows:

1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.

judge's attention to various considerations as they may bear on the interests of the child. Among them are the

2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.

3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.

4. The prosecutive merit of the complaint, i.e., whether there is evidence upon which a Grand Jury may be expected to return an indictment (to be determined by consultation with the United States Attorney).

5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime in the United States District Court for the District of Columbia.

6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

7. The record and previous history of the juvenile, including previous contacts with the Youth Aid Division, other law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to this Court, or prior commitments to juvenile institutions.

8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court.

In *Breed v. Jones*, 421 U.S. 519, 537, 95 S. Ct. 1790, 1791, 44 L. Ed.2d 346 (1975), the United States Supreme Court noted that "the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court."

[15] Sec. 48.01(2), Stats.:

"(2) INTENT. It is declared to be the intent of this chapter to promote the best interests of the children of this state through:

"(a) Juvenile courts adequately equipped to review each case on its individual merits under procedures designed to safeguard the legal rights of the child and his parents;

"(b) An integrated and co-ordinated program for all delinquent, neglected and dependent children both in their own community and while in the custody of the state;

"(c) Protection of children from unnecessary separation, either temporary or permanent, from their parents;

consideration of each case on its individual merits, eliminating unnecessary separation from parents, adequate care and rehabilitation for those children who must be separated from their parents, and maximizing the development of the child and controlling influences detrimental to him.[16]

In the case at bar the juvenile court did touch upon a number of the *Kent* criteria. The court's statement at the hearing indicates that the court rightly considered a robbery, obviously premeditated, by three persons in concert, to be a serious offense. The court considered that two of D. H.'s companions were adults.[17] Though no

"(d) Adequate care and rehabilitation for all children who must be separated from their parents temporarily for the child's protection or that of the public;

"(e) Co-ordinated planning to assist local communities in promoting effective programs in health, education, recreation and welfare for the maximum development of all children and for the control of influences detrimental to youth;

"(f) Assurance for children needing adoptive homes that they will be placed in the best home available; protection of children from adoption by persons unfit to have responsibility for raising a child; protection for children who are legally established in adoptive homes from interference by their natural parents."

[16] This court in *F.R.W.*, 61 Wis.2d at 210, quoted with approval the following from *Miller v. Quatsoe*, 332 F. Supp. 1269, 1275 (E.D. Wis. 1971):

"Unlike a typical criminal action, a juvenile waiver proceeding vests the judge with a wide amount of discretion in making his determination. In his decision making, the juvenile judge does not simply deal with a specific factual incident in the accused's life as does a criminal court judge, but rather the juvenile judge must consider the juvenile's past, his future, his mind, and his acts and then balance these factors against the safety, needs, and demands of society. Further, besides judging the 'whole man' as opposed to the act with wide as opposed to limited discretion, the juvenile judge may perform his task in a comparatively informal proceeding. *Kent, supra*, at 562, 86 S. Ct. 1045."

[17] It has been suggested that the presence of co-offenders over eighteen is an important consideration in waiver hearings. Waiver is likely to effect a greater equality of treatment. The offenders

actual violence occurred, the alleged crime was certainly aggressive in its nature, and the complaint does reveal that D. H. was a prime actor in its commission; D. H. personally acted in a highly threatening manner toward the proprietor of the grocery store. It would appear from the record that the case has prosecutive merit. In short, factors relating to the seriousness of the alleged crime and the public interest in being protected from such crimes are present and support the decision to waive juvenile jurisdiction.

The court appears to have given some—but not a great deal of—concern to the other side of the balance, namely, the welfare and possible rehabilitation of the juvenile before it. The judge was informed that D. H. apparently had no prior criminal or juvenile record and that his parents were divorced. The judge found it significant that D. H. was neither employed nor in school. However, although both D. H. and his mother were present, the court made no attempt to learn anything further concerning D. H.'s family background, why he dropped out of school, or any other aspects of his personal history. Beyond the judge's statement that he felt the time for which D. H. would remain subject to juvenile jurisdiction was inadequate in view of the nature of the offense, no consideration appears to have been given on the record to the "likelihood of reasonable rehabilitation of the juvenile" within the juvenile system (the 8th criterion in *Kent*). It should be noted that D. H. was only two months past the age of sixteen, the youngest age at which

could be jointly prosecuted (providing efficiency for prosecutor and courts) and if warranted could receive similar sentences. Comment, *Waiver of Jurisdiction in Wisconsin Juvenile Courts*, 1968 Wis. L. Rev. 551, 553; Wis. Special Study Committee on Criminal Justice Standards and Goals, *Juvenile Justice Standards and Goals*, Standard 12.11(f) 5 (1975).

waiver for prosecution as an adult is allowed. The juvenile system would thus have had almost as much time to work with D. H. as it would with anyone for whom waiver was a possibility.

We have held that it was not mandatory in every case that before a proper waiver could be made "the juvenile court was obligated to hear testimony from social workers and child psychologists directed to the questions of defendant's prospects for rehabilitation and propensity for committing similar crimes in the future." *Mikulovsky v. State*, 54 Wis.2d 699, 707, 708, 196 N.W.2d 748 (1972). Nevertheless, this court believes that at a waiver hearing the record should show that the juvenile court judge considered the availability of facilities, programs and personnel under juvenile court jurisdiction and the possibility of satisfactory protection of the public and rehabilitation of the child within the juvenile system. Counsel and the court have an important role in exploring the alternatives to waiver that are available. *See Haziel v. United States*, 404 F.2d 1275 (D.C. Cir. 1968); *Miller v. Quatsoe*, 332 F. Supp. 1269, 1275 (E.D. Wis. 1971).

Thus the juvenile court judge should, on the record, base his decision on waiver on such criteria as:

1. The prior record and character of the juvenile, including his motives and attitudes; his physical and mental maturity; his pattern of living; his prior offenses; his prior treatment record and his potential for responding to the juvenile correctional facility.

2. The type of offense—the seriousness of the offense; whether the crime was committed in an aggressive, violent, premeditated or willful manner—and the prosecutive merit.

3. The comparable adequacy and suitability of facilities available to this juvenile in the juvenile and criminal courts.[18]

Not all the relevant factors need be resolved against the juvenile, and this court cannot make a mathematical calculation as to the weight to be given by the juvenile court judge or this court to each factor. However, we do require the record to show that the judge examined these factors and set forth the reasons motivating waiver with sufficient specificity to allow review.

What this court said in *McCleary v. State,* 49 Wis.2d 263, 277, 182 N.W.2d 512 (1971), with respect to another discretionary function, the sentencing process, is relevant here:

"Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning. This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards. As we pointed out in *State v. Hutnik* (1968), 39 Wis.2d 754, 764, 159 N.W.2d 733, '. . . there should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth.' "

Adherence to this practice will not only aid appellate review, but perhaps more importantly, it will inevitably facilitate the decision-making process of the juvenile

[18] For a discussion of the criteria to be used in a waiver proceeding, *see* Schornhorst, *The Waiver of Jurisdiction: Kent Revisited,* 43 Ind. L. J. 604, n. 127 (1968) ; Comment, *Juvenile Court Waiver: The Questionable Validity of Existing Statutory Standards,* 16 St. Louis L. J. 604 (1972) ; Comment, *Waiver of Jurisdiction in Wisconsin Juvenile Courts,* 1968 Wis. L. Rev. 551; Stamm, *Transfer of Jurisdiction in Juvenile Court,* 62 Ky. L. J. 122, 157 (1973) ; Wis. Special Study Committee on Criminal Justice Standards and Goals, *Juvenile Justice Standards and Goals,* Standard 12.11(f) (1975).

court in the first instance. *See McCleary, supra,* 49 Wis.2d, at 282.

Enough has been said to indicate that the records in the case at bar leaves something to be desired. It would have been better had the court received more information or given a more detailed explication as to why the time remaining for juvenile jurisdiction was inadequate in this case. However, the record does reflect, as discussed above, that the judge considered various factors properly bearing on the decision whether jurisdiction should be waived, and it does not reflect reliance upon any improper or irrelevant considerations.

The juvenile court had before it a youth charged with robbing a store at night along with three accomplices, two of whom were adults. The record indicates that D. H. was not simply co-operating in the venture, but was in fact the leader of the group. He attempted to force the store's owner to surrender the money by telling him one of the group had a gun, and when this failed, he threatened the owner with direct physical violence. The robbery was clearly a premeditated act, and the group had apparently driven up to Kenosha from Illinois to commit it. D. H. was neither in school nor employed.

Though less deference is to be given the juvenile court's judgment here than would have been accorded it on a more complete record, we accept that court's analysis of the situation as far as it went and we evaluate its decision in light of the fact that it had the opportunity, not available to this court, to observe D. H.'s demeanor as it reflected on his attitude and level of sophistication. We find it a close question. The facts show a serious premeditated offense involving a threat of violence, committed by one having an apparently aimless pattern of living. Though D. H. appeared to have no prior record, the juvenile court could have found, as it did, that he possessed a degree of criminal sophistication

well beyond his years, and that because of this his treatment as a juvenile would not have been conducive to rehabilitation, and would therefore have been inappropriate.

The waiver will be upheld where the judge considered the proper factors and there is a preponderance of information before the judge that shows the determination is proper. We conclude that the decision to waive juvenile jurisdiction was not an abuse of discretion under the circumstances of this case.

*By the Court.*—Order affirmed.

ROBERT W. HANSEN, J. *(concurring)*. The writer sees the appeal to the circuit court of a waiver of juvenile court jurisdiction as provided for in sec. 48.47, Stats.[1] This statute provides for appeal to the circuit court of an adjudication by the juvenile court by any aggrieved party. The majority finds appeal under sec. 48.47 "not adequate under present circumstances."

The writer would hold sec. 48.47 is applicable and controlling. This statute fashions a procedure for appeal to the circuit court "in the manner in which appeals are taken from judgments in civil actions." Under sec. 48.47 the state, as an aggrieved party, has the right to appeal a refusal to waive jurisdiction by the juvenile court judge.

Under the court-fashioned remedy of the majority, with the appeal of a waiver to be handled by procedures for appeals of judgment in civil actions, the writer would submit that the right of the state, as an aggrieved party, to appeal a refusal to waive should also be spelled out.

---

[1] Sec. 48.47, Stats., Children's Code, providing: "Any person aggrieved by an adjudication of the county court under this chapter and directly affected thereby has the right to appeal to the circuit court of the same county within 40 days of the entry of the order in the manner in which appeals are taken from judgments in civil actions. . . ." *See also:* Sec. 274.33, Stats., entitled *Appealable orders.*

This would follow the terms and general policy as to availability of appeal to "aggrieved parties" as set forth in sec. 48.47, Stats.[2]

---

[2] See: 1955 Revision Committee Note to sec. 48.47: "Another important change is that it allows an appeal by a welfare agency which files a petition in a case since the agency would come within the class of those aggrieved by the adjudication and directly affected thereby. This overrules *In re Fish,* 246 Wis. 474, 17 N.W.2d 558 (1944)." *See also: In re Johnson,* 9 Wis.2d 65, 100 N.W.2d 383 (1960). However, *In re Fish* was not overruled as to the following point of law: "The right to an appeal is not a common-law right. Unless the statute provides for an appeal, no right exists." Citing *Fronhaefer v. Richter,* 237 Wis. 282, 296 N.W. 588 (1941); *Green Bay v. Saunders,* 237 Wis. 229, 296 N.W. 592 (1941). Accordingly, in order to appeal at all, a party must invoke sec. 48.47, Stats. Once that section is invoked, it is clear that all aggrieved parties, including the state, may appeal.