COURT OF APPEALS
DECISION
DATED AND FILED

May 10, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP436**

STATE OF WISCONSIN

Cir. Ct. No. 2020JV48

IN COURT OF APPEALS
DISTRICT III

IN THE INTEREST OF D. J. L., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

  PETITIONER-RESPONDENT,

 V.

D. J. L.,

  RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for St. Croix County: EDWARD F. VLACK III, Judge. *Affirmed*.

¶1 HRUZ, J.[1] David[2] appeals a circuit court order waiving him from juvenile court into adult court to face criminal charges. He contends the court

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

erroneously exercised its discretion in that regard because the waiver ruling lacked any factual support or reasoning. We reject David's argument and affirm the waiver order.

## BACKGROUND

¶2    On July 2, 2020, the State filed a delinquency petition against then seventeen-year-old David,[3] alleging that he had exposed his intimate parts to a child, contrary to WIS. STAT. § 948.10(1)(b), and committed sexual assault of a child under the age of thirteen, contrary to WIS. STAT. § 948.02(1)(e). The crimes were alleged to have occurred on or between April 1, 2019, and June 15, 2019, and on or between March 15, 2020, and May 20, 2020. The incidents involved Lucy and Bridgette, who were five and nine years old, respectively, at the time of the alleged offenses against them. The petition and certain testimony at the waiver hearing alleged that David showed both Lucy and Bridgette his buttocks. With respect to Bridgette, David had also allegedly touched her with a vibrator on her intimate parts (above her clothing), had both himself and Bridgette touch each other's genitals, and had rubbed his penis back and forth on the outside of Bridgette's genitals until he ejaculated. David repeatedly denied all of the allegations.

¶3    On July 7, 2020, the State filed a petition asking the circuit court to waive David into adult court pursuant to WIS. STAT. § 938.18. The court held an

---

[2] For ease of reading, we refer to appellant D.J.L. using the pseudonym "David" in this confidential matter. Pursuant to the policy underlying WIS. STAT. RULE 809.86, we likewise use pseudonyms to refer to the two alleged victims.

[3] David's date of birth is July 29, 2003.

evidentiary hearing on the waiver petition on February 4, 2021, during which three witnesses testified.

¶4     First to testify was Jennifer Pulk, a juvenile court intake worker for the Pierce County Department of Human Services (the "Department"), who handled David's intake.  Pulk stated that David's mental maturity was that of an "early teen"—in her words, that of a fifteen or sixteen year old.  She explained that David had special education programming in school, but he was comfortable in "mainstream classes" and it seemed he would graduate on time.  Pulk also testified that during her intake interview with David, he followed her questions, made sense while talking, and did not exhibit any physical or mental disabilities.  She also noted that David had no previous juvenile referrals or record.

¶5     Pulk further testified that given David's age and the resources of the juvenile justice system, he could receive supervision and counseling only until his eighteenth birthday, but transitional programs were available to him for continued treatment thereafter.  Pulk testified that while she is aware of the Serious Juvenile Offender Program ("SJOP"), the Department generally attempts to impose the least restrictive option for placement.  If David were to be found as a serious juvenile offender, he would be placed in corrections and supervised through the Department of Corrections until the age of twenty-one.  She also stated that if David was not found to be a serious juvenile offender, there were still various treatment options available.

¶6     Next, David called Dr. Lakshmi Subramanian, a licensed psychologist who conducts psychological and psychosexual evaluations for individuals of all ages.  Subramanian had evaluated David and prepared a written report detailing her findings, which was entered into evidence at the hearing.  In

her report, Subramanian described David's circumstances leading up to the time of the hearing. She explained that David had resided in several foster homes and group homes before the age of nine, at which time he was placed in foster care with his current foster parents—who ultimately adopted him. Subramanian's report and testimony noted that, while in school, David exhibited a combination of positive and negative behaviors.

¶7      As for positive behaviors and abilities, Dr. Subramanian noted that David maintained a large number of friendships, was a strong math student, his attitude toward his teachers was similar to same-aged peers, and he engaged in a leadership role in school. Indeed, Subramanian testified that interpersonal functioning appeared to be David's strength. He related to co-workers at one of his former jobs and had attended karate classes. David's test results showed an "average" intelligence, and most of his composite and skill scores for his personal adjustment abilities fell within the normal range. When speaking with Subramanian, David was not delusional or hallucinatory, but rather he was oriented as to person, time and place. Subramanian concluded that David "has demonstrated a keen sense of self-awareness." David had no history of substance abuse or theft. Finally, Subramanian agreed that David knew right from wrong, further stating that he displayed full knowledge of sexual laws and correctly identified eighteen years old as the age for legal consent to have sex.

¶8      On the negative side, Dr. Subramanian stated that David was somewhat immature for his age and struggled with disruptive behaviors regarding social boundaries, especially in romantic situations. For example, he would constantly text the person of interest and "become[] overly clingy." Subramanian testified that David has emotional problems, including depression, attention deficit hyperactivity disorder ("ADHD"), and "complex trauma." David also has

4

specified neurodevelopmental disorders, which result in him having difficulties with problem solving and impulsivity.

¶9     Doctor Subramanian opined that David's treatment goals would be three-fold: learning skills related to healthy relationships and sexuality; problem-solving skills; and emerging adult skills, such as employment and higher education.  More generally, Subramanian discussed juvenile brain development, noting that even well-adjusted adolescents make impulsive decisions, and those who have experienced neglect or trauma in their past have issues related to relationships and sexual development.  Ultimately, she opined that community placement, not incarceration, is the best place for a teenager such as David to learn adult skills and that incarceration will hinder David's development.

¶10     Finally, Detective Peter Schultz of the Hudson Police Department testified about his investigation of the alleged crimes, David's statements to police, and the alleged victims' accounts of the incidents.[4]  During one of those interviews, David proposed that a possible mix-up by the victims had occurred whereby he was misidentified as the perpetrator.  Schultz testified that he did not believe misidentification was a concern.  Schultz further testified that while he was interviewing David, David's speech made sense, he appeared to understand Schultz, and he showed no signs of delusion or hallucination.

¶11     The circuit court adjourned the hearing to February 19, 2021, but no additional testimony was presented on that date.  Instead, the court ordered the

---

[4] Detective Schultz was a witness for the State.  He was taken out of order by agreement of the parties in order to accommodate Dr. Subramanian's schedule.

parties to present their arguments in written briefs, and it set a date for an oral ruling on the waiver petition.

¶12     The circuit court ultimately granted the State's petition for waiver in early March 2021, providing both an oral summary of its decision and, shortly thereafter, a written decision.  In its oral ruling, the court considered the waiver criteria in WIS. STAT. § 938.18(5).[5]   Addressing § 938.18(5)(a), the court found

---

[5]   The criteria under WIS. STAT. § 938.18(5) are as follows:

> (a) The personality of the juvenile, including whether the juvenile has a mental illness or developmental disability, the juvenile's physical and mental maturity, and the juvenile's pattern of living, prior treatment history, and apparent potential for responding to future treatment.
>
> (am) The prior record of the juvenile, including whether the court has previously waived its jurisdiction over the juvenile, whether the juvenile has been previously convicted following a waiver of the court's jurisdiction or has been previously found delinquent, whether such conviction or delinquency involved the infliction of serious bodily injury, the juvenile's motives and attitudes, and the juvenile's prior offenses.
>
> (b) The type and seriousness of the offense, including whether it was against persons or property and the extent to which it was committed in a violent, aggressive, premeditated or willful manner.
>
> (c) The adequacy and suitability of facilities, services and procedures available for treatment of the juvenile and protection of the public within the juvenile justice system, and, where applicable, the mental health system and the suitability of the juvenile for placement in the serious juvenile offender program under [WIS. STAT. §] 938.538 or the adult intensive sanctions program under [WIS. STAT. §] 301.048.
>
> (d) The desirability of trial and disposition of the entire offense in one court if the juvenile was allegedly associated in the offense with persons who will be charged with a crime in the court of criminal jurisdiction.

that David had a "dysfunctional upbringing" that "obviously has an impact on him." The court noted that David had suffered from post-traumatic stress disorder ("PTSD"), and he had emotional symptoms and personality adjustment issues in school. The court also noted David's treatment for depression, a neurological disorder and ADHD, adding that David might be "resistant to therapy but he does currently remain engaged." As to the criterion in § 938.18(5)(am), the court noted that David had no prior juvenile record. As to the criterion in para. (b), regarding the seriousness of the offense, the court restated the nature of the crimes, quantifying the seriousness of sexual assault of a child under the age of thirteen in terms of the maximum penalty if one is convicted as an adult.

¶13 The circuit court then discussed the criterion in WIS. STAT. § 938.18(c), regarding the adequacy and suitability of the facilities, services and procedures available for David's treatment, as well as the protection of the public, including suitability for placement in the SJOP. The court noted that David had reached the age of eighteen in July 2021, and the court found that the SJOP "would not be sufficient to provide the services necessary." In particular, the court reasoned that "[t]he distinct impression is that there are some underlying issues that have to be dealt with and I think it's going to be a period of time to deal with that," implying that such time would last beyond David's twenty-first birthday.

¶14 The circuit court also filed a written order a few days after its oral decision. There, the court detailed each of the arguments from the State and David (including on each of the statutory factors), and the court added its own findings, echoing many of those noted above. As to WIS. STAT. § 938.18(5)(a), the court reiterated that David had a dysfunctional upbringing until his adoption and that he still suffers the effects of PTSD and other mental health issues. As to the criterion

in para. (b), in addition to reciting the maximum possibility criminal penalty on the more serious offense, the court found "[t]he two offenses are against persons, both minors, and were allegedly committed under circumstances in which the children were encouraged to remain silent." As to the criteria in paras. (c) and (d), the court found that the SJOP has enhanced services and supervision, but, again—and following the State's argument and the court's own comments in its oral ruling—because the SJOP ends at age twenty-one, it would not afford enough time for David to receive the services he needed, both for his betterment and to protect the public.

¶15 Finally, and in summation, the circuit court noted that

> the evidence is clear and convincing that it is contrary to the best interests of the public to hear this case in juvenile court, based on this Court's comments set forth above. Further, this Court is of the opinion, based on the apparent treatment needs that [David] has and may have in the future, that it also is not in [David's] best interests to hear this case in Juvenile Court. [David]'s current treatment needs obviously require intensive and lengthy treatment that, in this Court's opinion, can be best provided in the adult system.

¶16 David petitioned for leave to appeal the circuit court's waiver decision, which is a nonfinal order. This court granted that petition on March 17, 2021.

## DISCUSSION

¶17 "Waiver of juvenile court jurisdiction is a 'critically important' decision that entails depriving the juvenile and the public of the substantial protections the juvenile court system provides to the juvenile accused of committing a crime." *State v. Kleser*, 2010 WI 88, ¶83, 328 Wis. 2d 42, 786

8

N.W.2d 144 (citation omitted). Ultimately, to waive a juvenile into adult court, the circuit court must conclude there is clear and convincing evidence that "it is contrary to the best interests of the juvenile or of the public" for the case to be heard in juvenile court. WIS. STAT. § 938.18(6). If the delinquency petition is found to have prosecutive merit,[6] the court "shall base its decision" on whether to grant the State's waiver petition on the numerous criteria in § 938.18(5). *See* § 938.18(5); *see also* **D.H. v. State**, 76 Wis. 2d 286, 304-05, 251 N.W.2d 196 (1977) (addressing WIS. STAT. § 48.18 (1975-76), the predecessor statute to § 938.18). The court does not, however, need to determine that every statutory criterion supports waiver. **B.B. v. State**, 166 Wis. 2d 202, 209, 479 N.W.2d 205 (Ct. App. 1991). The court has discretion as to the weight it affords each of the criteria. **J.A.L. v. State**, 162 Wis. 2d 940, 960, 471 N.W.2d 493 (1991).

¶18 We will affirm a circuit court's decision to waive a juvenile into adult court unless the court erroneously exercised its discretion. **State v. Tyler T.**, 2012 WI 52, ¶24, 341 Wis. 2d 1, 814 N.W.2d 192. "A juvenile court erroneously exercises its discretion if it fails to carefully delineate the relevant facts or reasons motivating its decision or if it renders a decision not reasonably supported by the facts of record." **Id.** "In reviewing the juvenile court's discretionary decision to waive jurisdiction, we look for reasons to sustain the court's decision." **Id**.

¶19 We conclude the circuit court did not erroneously exercise its discretion in determining that the State met its burden of proof for waiving David

---

[6] David did not challenge, either below or on appeal, the circuit court's determination that the delinquency petition had prosecutive merit pursuant to WIS. STAT. § 938.18(4)(a).

into adult court. Rather, the record adequately supports the court's exercise of discretion and a reasonable basis for the court's determination.

¶20 In its decisions, and as explained above, the circuit court went through all the relevant statutory factors, considering WIS. STAT. § 938.18(5)(a), (b), and (c), after reviewing extensive arguments by the parties regarding the application of those factors.[7] Concerning David's "personality," relevant under para. (a), the court found that despite progress, David still suffers from the effects of the first nine years of his life in terms of his continuing PTSD symptoms, among numerous other issues for which he was receiving treatment. The court also expressly noted that David, at times, might be resistant to treatment. At the same time, however, the evidence tended to show David's capability to understand himself and others, and to interact properly with others. In its written order, the court made its findings, which included excerpts from the parties' extensive written arguments on this criterion (excerpts that were clearly included as part of the court's analysis), all of which reflected the substantial amount of testimony and other evidence on these matters.

¶21 Regarding the type and seriousness of the alleged offenses, under WIS. STAT. § 938.18(5)(b), both parties acknowledged, appropriately, that the alleged offenses are very serious, with the State noting that "[t]he particular facts of the offenses weigh most heavily against [David] from the standpoint of the waiver decision." For its part, the circuit court noted that the crimes were sexual offenses against minors, one of which was a very serious, Class B felony when

---

[7] It is undisputed that David had no prior criminal record of any kind for purposes of WIS. STAT. § 938.18(5)(am) and that the criterion in para. (d) is inapplicable.

committed by an adult. The court also noted that the two offenses "were allegedly committed under circumstances in which the children were encouraged to remain silent," through David's use of both threats and gifts.

¶22    The circuit court then addressed "[t]he adequacy and suitability of facilities, services and procedures available for treatment of the juvenile and protection of the public within the juvenile justice system" under WIS. STAT. § 938.18(5)(c). As David notes in his briefing, the court gave particular attention to David's treatment needs, with the court describing his needs as the area "where there was the most disagreement" between the parties. The court recognized that the SJOP has enhanced services and supervision for juveniles, but also that the SJOP ends when the individual turns twenty-one. The court opined that the time available until David reaches the age of twenty-one would be insufficient to address his treatment needs. Specifically, the court stated:

> [B]ased on the apparent treatment needs that [David] has and may have in the future, that it also is not in [David's] best interests to hear this case in Juvenile Court. [David]'s current treatment needs obviously require intensive and lengthy treatment that, in this Court's opinion, can be best provided in the adult system.

¶23    While David faults the circuit court for not expressly tying its analysis to the adequacy of the available services if David were adjudicated delinquent, the evidence on this matter was clear. And the court's principal concern in this regard was something undisputed and fixed—time, specifically the lack thereof. Plainly, in the court's estimation, despite the effectiveness of the services that Dr. Subramanian testified would be available to David if he remained in juvenile court, they would not be sufficient from a temporal standpoint. In other words, however effective those programs may be in a general sense, the

court weighed all the evidence and found that David will continue to require treatment after he reaches the age of twenty-one. In weighing the evidence, the court also was aware that David had denied all of the accusations, such that, if he were found guilty of the offenses, his denials would increase the need for sufficient treatment.

¶24 In all, the circuit court considered the delinquency and waiver petitions, the intake report filed by Pulk, David's school and other records, Dr. Subramanian's report, the various testimony at the hearing, and the extensive briefing and arguments by the parties regarding all relevant matters. It applied the relevant statutory factors and made reasonable inferences from all the evidence in the case to reach its discretionary conclusion. "[T]he weight and credibility of the evidence [are] matters ... that are left to the discretion of the [juvenile] court." *Schorer v. Schorer*, 177 Wis. 2d 387, 400, 501 N.W.2d 916 (Ct. App. 1993). Cognizant of our standard of review, we will not reweigh the evidence as David requests.

¶25 David's arguments to the contrary are unavailing. First, as an overall matter, David asks us to conclude that the circuit court erroneously exercised its discretion in weighing the facts and statutory factors. In particular, he contends that the court failed to rationalize and adequately explain its decision, and that many facts militate against waiver. He also relies heavily on Dr. Subramanian's ultimate opinion against waiver into adult court. Again, David is essentially asking us to substitute our judgment for that of the circuit court. But as noted, we are to uphold the court's decision if our review reveals that the court considered the appropriate facts and applied the appropriate law. *See Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). As just outlined above, there is no doubt that the court did both here.

¶26 Indeed, David's quarrels with the circuit court's decisions are based largely on only one of the statutory factors—namely, the adequacy and suitability of facilities, services and procedures available for David's treatment under WIS. STAT. § 938.18(5)(c). But the court clearly, and properly, also gave due weight to the criteria in paras. (a), (am) and (b), including the serious underlying offenses committed by an adolescent of fairly average ability, intellect, and interpersonal skill. In addition, while Dr. Subramanian did ultimately opine against waiver, much of the factual information and analysis in her report and corresponding testimony supported the court's conclusions. The court was entitled to rely on that information while also rejecting Subramanian's ultimate opinion.

¶27 We also reject David's contention that the circuit court violated the rule stated in *State v. C.W.*, 142 Wis. 2d 763, 419 N.W.2d 327 (Ct. App. 1987) (superseded by statute on other grounds). There, this court held that a juvenile court had no authority to deny waiver by speculating that the adult court may have given a more lenient sentence than the juvenile court deemed appropriate. *Id.* at 768. David asserts that such a violation occurred here because the court, in both its written and oral decisions, briefly recited the statutory maximum penalty David would face if he was convicted in adult court on the graver offense—i.e., sexual assault of a child under the age of thirteen. Specifically, he submits that "[t]here is a logical inference from the court's repeated citation that it erroneously considered the maximum penalty and how the seriousness of the offense would result in 1/20 the penalty if [David] was to stay in juvenile court."

¶28 Having reviewed the record and the circuit court's decisions, we agree with the State that the comments at issue do not amount to reversible error. Rather, the court was merely quoting the statutory maximum penalty in adult court in order to highlight the seriousness of one of the underlying offenses, a

13

consideration that was expressly part of the court's analysis under WIS. STAT. § 938.18(5)(c). The court did not consider the maximum sentences possible in adult court in the sense prohibited by *C.W.* or in any otherwise improper manner.

¶29 In sum, based on our review of the record and the applicable legal standards, we conclude the circuit court did not erroneously exercise its discretion in concluding that waiver of its juvenile jurisdiction over David was appropriate. The court applied the evidence to each of the factors under WIS. STAT. § 938.18(5) and reached a rational determination supported by the record. Moreover, the court appropriately stated that it considered the best interest of David and the need to protect the public, and it determined that the evidence supported a finding that it should waive jurisdiction. *See* § 938.18(6).

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.