LEHMANN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 131. Argued June 5, 1968.—Decided June 28, 1968.*
(Also reported in 159 N. W. 2d 607.)

For the plaintiff in error there was a brief by *Andrew J. Zafis* and *Zafis & Rummel,* all of Oconomowoc, and by *Agnes Loizeaux* of Marinette, and oral argument by *Andrew J. Zafis.*

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Daniel J. Miron,* district attorney of Marinette county.

BEILFUSS, J. The issues presented on this appeal are as follows:

1. Should the trial court have excluded evidence concerning the defendant's lack of license and registration as a livestock dealer?

2. Is the evidence sufficient to sustain the conviction?

3. Should the evidence of the defendant's prior misconduct have been excluded?

4. Should the court adopt a rule requiring presentence reports be made available to the defendant?

5. Was the defendant's representation by counsel at the sentencing inadequate?

The defendant contends it was error to admit evidence concerning his status as a registered livestock dealer under federal law and as a licensed livestock dealer under Wisconsin law.

The first witness to testify concerning the defendant's registration was Glen Boyle, employed by the United States Department of Agriculture. Mr. Boyle testified that all livestock dealers who operate in interstate commerce [1] are subject to the "Packers and Stockyards Act," which requires registration with the Secretary of Agriculture. The dealers are also required to post a surety bond to assure livestock producers they will be paid for livestock they sell, and to pay for cattle not later than the close of the next business day.

Mr. Boyle testified that defendant has been registered and bonded intermittently since 1958 but that he had been suspended as a registrant in December of 1964

---

[1] Mr. Boyle explained that if the dealer purchases within the state and sells to a packer in the state but which operates interstate, the dealer is considered to be operating in interstate commerce. Mr. Boyle also testified that the Stoppenbach Sausage Company, with which the defendant did business, was on the government's rolls as doing business in interstate commerce.

(prior to the conduct complained of in the present action). State's Exhibit 7, over defendant's objection, was offered and admitted into evidence. This exhibit is a document from the United States Department of Agriculture, dated December 16, 1964, ordering the defendant to

". . . cease and desist from (1) operating as a livestock dealer in commerce within the meaning of the act without filing and maintaining a reasonable bond, . . . and (2) failing to pay when due the full purchase price of livestock purchased in commerce."

The order also suspended the defendant's registration until he complied with the bonding requirement set forth in the order.

The second witness giving testimony on the defendant's dealer registration was Donald R. Bergner, an investigator with the Wisconsin State Department of Agriculture. Bergner testified that sec. 95.70, Stats., requires one who deals in livestock in this state to be licensed by the State Department of Agriculture. State's Exhibit 8 was read into the transcript by Mr. Bergner. This exhibit, a statement from the deputy director of the State Department of Agriculture, states that no record could be found of a livestock dealer's license being issued to the defendant.

It is the defendant's contention this evidence was immaterial to the question of his guilt or innocence. The defendant argues the evidence is inflammatory and served no purpose other than to prejudice the jury.

The defendant's position cannot be sustained. The evidence of licensing and registration is not direct evidence of the crime. However, it is relevant circumstantial evidence probative of the crime not because it is direct proof of it but because it elucidates the circumstances under which the acts alleged to constitute the crime took place. This evidence was introduced by the state as a link

in the chain of circumstances which led the Patzes to be defrauded by the defendant. The defendant first appeared at the Patz farm with two cattle dealers, imparting the impression that he, too, was a cattle dealer. Part of the trust by the Patzes was a result of their belief that the defendant, as a cattle dealer, would not want to jeopardize his license. This was revealed in the testimony of Clifford Patz:

"*Q.* Now when Mr. Lehmann proposed to receive and pay for the cattle as you have described, what was your reaction to this proposal? *A.* Well, going under the assumption that he was a registered and certified livestock dealer, and he had told us on previous discussions that he had a farm in Michigan, he was running a big dairy farm in Michigan, had quite a number of people working for him down there, had a big milking herd establishment down there, that he did business in several different states and even brought cattle into Puerto Rico and Cuba, he told us, we assumed that he meant what he said and that he couldn't even risk his livestock dealer license to tell us anything other than what he actually was going to fulfill and what he told us, so under the assumption that him telling us all of this information, we believed him that he would be back the following day or no later than Saturday to pick up another load, then he would have his check along with him and a down payment for the balance of the cattle, under this assumption and after telling us this, we proceeded to load the 14 head of cattle."

The jury could believe that the defendant enlisted the confidence of the Patzes with persuasive talk and appearances. This aided him in accomplishing the fraud on the Patzes and was relevant to the case. The fact that the defendant was neither licensed nor registered to deal in livestock is evidence of the overall scheme of the fraud. It was not error to receive this evidence.

The evidence of the defendant's guilt is clearly sufficient to sustain the conviction. The offense with which he was charged is theft by fraud, sec. 943.20, Stats.:

"**Theft.** (1) Whoever does any of the following may be penalized as provided in sub. (3) :

" . . .

"(d) Obtains title to property of another by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made. 'False representation' includes a promise made with intent not to perform if it is a part of a false and fraudulent scheme."

The defendant does not deny taking the cattle from the Patz farm. His defense is that he intended to pay for them, that it was Mrs. Shirley Zilisch's fault as she was responsible for sending the check. The defendant testified that the business funds were kept in Mrs. Zilisch's personal checking account. The defendant further testified he did not remember whether he sold the 14 heifers to Stoppenbach's the day after taking them from the Patz farm.

Mrs. Zilisch totally contradicted the defendant's testimony. She testified she was never in business with the defendant, never received any business funds from him to put in her checking account, and was never asked by defendant to send the Patzes a check.

In addition to this rebuttal testimony, there is the fact that on the day following the taking of the 14 heifers from the Patzes, the defendant sold 14 heifers to Stoppenbach's for almost $1,000 less than he promised he would pay the Patzes. This is completely inconsistent with his statement that he was finishing a semiload to send south.

The state also introduced the testimony of two individuals who had prior dealings with the defendant. The first of these, Lester Moll, a dairy farmer in Columbus, Wisconsin, testified that on December 9, 1965, the defendant took three of his cattle promising in return he would deliver two springing heifers and approximately $100 in cash. Moll's cows were sold by the defendant to the Stoppenbach Company the next day. Although the de-

fendant received payment on the same day, Moll never received either cattle or cash from him.

The second witness introduced to testify concerning dealings with the defendant was Robert Britton, a farmer from Republic, Missouri. Britton's testimony essentially was that the defendant had taken 13 heifers and 24 steers from him promising payment. All Mr. Britton received in payment were checks which were uncollectable. Britton and a neighbor came to Wisconsin and talked with the defendant about payment. The defendant promised payment but revealed he did not have the money at that time. He also revealed he had sold Britton's cattle and had spent the receipts.

The evidence is entirely sufficient to meet the statutory elements and to sustain the jury's verdict. From the record we are in accord with the trial court's observation of the jury's verdict:

"To me the evidence of guilt was overwhelming. I think I would have fallen off the chair if they had found him not guilty."

The defendant objects to the introduction of evidence of his prior acts of misconduct. In *Whitty v. State* (1967), 34 Wis. 2d 278, 293, 294, 149 N. W. 2d 557, we stated:

"It is not necessary that prior-crime evidence be in the form of a conviction; evidence of the incident, crime or occurrence is sufficient. In *Stevens* and *Bridges* evidence of prior acts not resulting in a conviction was permitted. In *State v. Lombardi* (1959), 8 Wis. (2d) 421, 438, 99 N. W. (2d) 829, this court spoke not of crimes but of 'other occurrences' in which the defendant had participated. The language 'other occurrences' was used in the majority opinion in *State v. Reynolds, supra*. We are asked to adopt the concurring opinion in *Reynolds* but we decline to do so. We think the admissibility of prior-crime evidence does not depend upon admission or conviction for prior criminal conduct but upon its probative value which depends in part upon its nearness in time, place and circumstances to the alleged crime or element sought to be proved.

"We think the standards of relevancy should be stricter when prior-crime evidence is used to prove identity or the doing of the act charged than when the evidence is offered on the issue of knowledge, intent or other state of mind. McCormick, Evidence (hornbook series), p. 331, sec. 157. In identity cases the prejudice is apt to be relatively greater than the probative value. However, we cannot say that all evidence admitted under the multiadmissibility rule to prove identity, intent, knowledge or other element of the crime is *per se* so prejudicial on the issue of guilt or innocence as to require its exclusion.

"We recognize some juries might be confused by evidence having little probative value, that the defense might be surprised, and that the collateral effect of other-crime evidence might be fatal prejudice on the issue of guilt although proper instructions to the jury regarding the use of the evidence are given. But, we think the answer lies in the adoption of Rule 303 of the American Law Institute Model Code of Evidence. This rule balances relevancy against prejudice and provides:

" 'Rule 303. DISCRETION OF JUDGE TO EXCLUDE ADMISSIBLE EVIDENCE.

" '(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will

" '(a) necessitate undue consumption of time, or

" '(b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or

" '(c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered.' " [2]

The introduction of the testimony of the defendant's prior dealings with farmers Moll and Britton was highly probative on the difficult to prove element of intent. The trial court did not abuse its discretion in receiving this testimony in evidence.

The defendant contends that the trial court was biased against him at the time of sentence because of the court's use of a presentence report prepared by an agent of the State Department of Public Welfare. The report has been

---

[2] *See also Price v. State* (1967), 37 Wis. 2d 117, 154 N. W. 2d 222.

made a part of the record. The agent who made the investigation and the written report talked to the defendant but he refused to discuss his prior financial and cattle business activities. Most of the information detrimental to the defendant came from collateral sources such as records or officers of governmental agencies, sheriffs' departments, district attorneys, and the United States Department of Agriculture.

The defendant now complains that the report contains much hearsay and was permitted to stand unchallenged and uncorrected. There is nothing in the record to show that any information in the report was incorrect or misleading.

Prior to the imposition of sentence, the presentence report was made available to the district attorney and to defendant's counsel and was discussed by them with the trial judge in chambers.

At the time of the imposition of sentence in the courtroom, the trial judge made reference to the fact that he had a presentence report and knew its contents. Both the district attorney and defense counsel made reference to the report. The agent who made the report was also in the courtroom and upon request of the court orally repeated his recommendation that the defendant be sentenced to the Wisconsin State Prison without a recommendation for probation. The agent was not further questioned nor cross-examined, although he was available for that purpose. The trial court called the defendant, referred to the statements of the district attorney, defense counsel, and the agent, and then asked the defendant if he personally had any statement he wished to make. The defendant did make a statement in his own behalf but made no reference to the presentence report or any of the information contained in it.

The contention of the defendant is ruled by our statement in *Waddell v. State* (1964), 24 Wis. 2d 364, 368, 129 N. W. 2d 201:

"Whether this court should hold that, as a matter of law, the sentencing court must make the complete report, or any part of such report, available to the defendant and his counsel to permit them to offer rebuttal information or to make counterargument, is a matter we need not decide here since in the instant case the trial court made the entire presentence report available to defense counsel prior to the hearing on sentence. Neither the defendant nor his counsel offered any rebuttal information or argument and there was no abuse of discretion in the court's use of this information.[3]

The defendant contends on appeal that his counsel at the sentencing hearing did not effectively represent him because he made no attempt to correct errors in the presentence report. This court has not been informed as to any specific matters in the report which are erroneous.

There is no indication that trial counsel was inadequate at the sentencing. The rule is that representation by counsel must be so inadequate and of such low competency as to amount to no representation at all before this court will be persuaded relief should be granted. *State v. Clarke* (1967), 36 Wis. 2d 263, 153 N. W. 2d 61, and cases cited.

The record shows that counsel attempted to convince the court that the sentence should be minimal. He pointed out that this was the defendant's first felony conviction, that the defendant had spent over two months in jail (apparently awaiting trial), and asked the court to consider this. He attempted to convince the court the defendant was not of any real danger to the public, and he requested that the court show mercy. Simply because counsel failed to convince the court does not render his representation inadequate. From our review it appears

---

[3] *Huebner v. State* (1967), 33 Wis. 2d 505, 147 N. W. 2d 646, has no application. The report in *Huebner* dealt with a statutory presentence report concerning a sex crime which makes a finding as to whether the defendant is a "sex deviate." At page 525 we stated: "The report of the department bears no analogy to and is essentially different from a presentence report for penal sentencing . . . ."

the defendant was well represented throughout the entire proceeding.

*By the Court.*—Judgment affirmed.