STATE of Wisconsin, Plaintiff-Respondent,

v.

Leola DAVIS, a/k/a Lee Al Sharaah, Defendant-Appellant.†

Court of Appeals

*No. 91-0759-CR. Submitted on briefs November 6, 1991.—Decided October 22, 1992.*

(Also reported in 492 N.W.2d 174.)

† Petition to review denied.

713

For the defendant-appellant the cause was submitted on the briefs of *Morris D. Berman* of *Giesen & Berman, S.C.,* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.[1] Leola Davis appeals from a judgment convicting her of two counts of obtaining telephone service by fraud in violation of sec. 943.45(1)(e), Stats. She raises two issues: (1) whether the two-count charge was multiplicitous; and (2) whether the trial court improperly admitted "other wrongs" evidence. We decide both issues against Davis and affirm the convictions.

Davis was charged with opening two telephone service accounts under fictitious names and running up nearly $7,000 in unpaid charges. She moved to dismiss the information on grounds that the charges were multiplicitous, charging her twice for the same conduct, thereby violating her right not to be placed twice in jeopardy for the same offense. The trial court denied the motion and Davis was convicted on both counts. Other facts will be discussed in the body of the opinion.

## I. Multiplicitous Charges

The state may not charge a single offense in separate counts, because doing so would violate the double

---

[1]The case, originally taken under submission in November 1991, was reassigned to this judge on September 28, 1992.

jeopardy provisions of the United States and Wisconsin Constitutions. *State v. Tappa,* 127 Wis. 2d 155, 161, 378 N.W.2d 883, 885 (1985). We employ a two-part test to determine whether a charge is multiplicitous. We look first to whether the offenses are "identical in law and fact." *Id.* at 162, 378 N.W.2d at 886. If they are, charging the defendant with more than one crime would place him or her twice in jeopardy for the same act. If it is determined that the two are not identical in *both* law and fact, the charges may still be multiplicitous, and thus invalid, if it is shown that the legislature intended the "allowable unit of prosecution" for the offense to be only a single count. *Id.* at 164, 378 N.W.2d at 887.

Since Davis was charged with two violations of the same statute, the charges are the same in law. Whether they are the same in fact, however, depends upon whether one count requires proof of an additional fact which the other does not. *Tappa,* 127 Wis. 2d at 163, 378 N.W.2d at 886. It is an additional *fact* test, not an additional *element* test. *State v. Hamilton,* 146 Wis. 2d 426, 437, 432 N.W.2d 108, 113 (Ct. App. 1988).

The first count of the information charged Davis with obtaining telephone service by fraud when she opened an account in the name "Cheryl Sloan" on October 8, 1985, and between that date and February 3, 1986, ran up more than $6,000 in unpaid charges. The second count charged Davis with the same offense for opening a second account on November 19, 1985, this one in the name "S. and L. Financial Services," and failing to pay $900 in charges on that account.

She argues that the two counts are multiplicitous because there was but a single scheme—to obtain telephone service in the name of others—and that "divi[ding] that unitary scheme into multiple charges

was an artificial fractioning of a single course of conduct." We disagree.

We note first that Davis's argument would demand a single charge if Davis had, for example, fraudulently obtained service from the General Telephone Company in La Crosse under the name Cheryl Sloan in 1985 and then, two years later, defrauded Wisconsin Bell in Milwaukee by charging calls to a telephone credit card without the card owner's consent. Such a result makes no sense.

Here, while there is some overlap, the offenses were separated in time. Davis opened the S. & L. account more than a month after she opened the Sloan account, and she continued to obtain service on that account for more than a month after the "Sloan" offense was completed. "Under Wisconsin law, offenses . . . are different in fact if [they] are either separated in time or are significantly different in nature." *State v. Stevens,* 123 Wis. 2d 303, 322, 367 N.W.2d 788, 798, *cert. denied,* 474 U.S. 852 (1985).

██

Nor are offenses the same in fact when each involves a separate volitional act. "Where there is a separate volitional act, there is a basis for a separate charge." *State v. Bergeron,* 162 Wis. 2d 521, 535, 470 N.W.2d 322, 327 (Ct. App. 1991). In *Tappa,* the defendant was charged with concealing the movable property of another and with transferring the property—all under the same statute. The supreme court rejected his multiplicity defense, stating: "We conclude that it is appropriate to punish the Defendant separately for the transfers and the concealment because they are separate volitional acts. *There was ample time for the Defendant to reflect on his actions and recommit himself to the criminal*

*enterprise."* 127 Wis. 2d at 170, 378 N.W.2d at 890 (emphasis added).

Here, Davis, having opened one account in a false name and having received telephone service on that account for over a month, settled upon a second false name and opened and obtained unpaid-for service on a second account. These are separate and distinct volitional acts and thus formed an adequate basis for a separate charge.

■

It also required proof of different facts. To prove the first count, the state was required to establish that Davis falsely ordered telephone service in the name of Cheryl Sloan and failed to pay for it. To prove the second, the state had to prove that Davis falsely ordered and failed to pay for services on a different line in a different name—S. & L. Financial—"a significantly different evidentiary fact that is not required or pertinent to proof on the [first] count[ ]." *State v. Sauceda,* 163 Wis. 2d 553, 578, 472 N.W.2d 798, 808 (Ct. App. 1991), *rev'd,* 168 Wis. 2d 486, 485 N.W.2d 1 (1992). We conclude that the two offenses are not the same in fact.

■

Moving to the second element of the test, we may look to the language of the statute, its legislative history and context, the nature of the proscribed conduct, and the propriety of multiple punishments for the defendant's conduct, to determine whether, despite the fact that the offenses are not identical in both fact and law, the legislature nonetheless intended to limit the allowable unit of prosecution to a single charge. *Tappa,* 127 Wis. 2d at 165, 378 N.W.2d at 887.

Section 943.45(1), Stats., penalizes one who "obtains . . . telecommunications service" through a "contrivance . . . or [other] means to avoid payment of

lawful charges." If the "avoid[ed]" charges do not exceed $500, the offense is a misdemeanor; if they exceed that amount, it is a felony. The concluding subsection of the statute, sec. 943.45(4), then states: "When there has been more than one unlawful obtaining . . . by an offender . . . the aggregate of the charges for the . . . service unlawfully obtained . . . shall determine the grade of the offense."

Davis and the dissenting judge read sub. (4) as plainly evincing the legislature's intent that when a defendant engages in more than one act of fraudulently obtaining telecommunications service, the aggregate amount of the unpaid charges for those services "*shall determine* the grade of *the offense.*" Such a reading, of course, writes the nonitalicized language out of the statute.

██

We do not see sub. (4) as defining the offense. It exists only to provide a means of distinguishing between two levels of criminal culpability and punishment for the offense of fraudulently obtaining telecommunications service. It allows the charges for the service so obtained to be aggregated in order to determine whether *a particular offense* will be processed as a misdemeanor or a felony. It states plainly that the aggregate of the unpaid charges "shall determine *the grade of* the offense," not the offense itself. It neither defines the offense nor mandates lumping two separate and distinct frauds—two separate and distinct offenses—into a single charge.[2]

---

[2]The dissenting judge has developed an argument for reversal based on the legislative history of sec. 943.45, Stats., and concludes that that history establishes the legislature's intent to encompass all of a defendant's fraudulent acts into a single unit of prosecution. It is an argument that has not been raised—or even suggested by either party to the appeal. Indeed, the parties agree

■ We agree with the state that the allowable unit of prosecution in this case is each separate plan or scheme to obtain telecommunications service by fraud. And the value of individual calls made pursuant to or in connection with each separate plan or scheme to defraud may be aggregated to determine the grade of the offense—whether it is a felony or misdemeanor.

that the legislative history of the statute "offer[s] no additional insight into the legislature's intent."

Basically, the argument proceeds as follows. The predecessor version of sec. 943.45, Stats., punished the fraudulent obtaining of telecommunications service as a misdemeanor and ended there. A 1962 amendment added language making the offense a felony if the charges for the service obtained exceeds $500 and added sub. (4) indicating, as we have discussed, that where there is "more than one unlawful obtaining . . . the aggregate of the charges . . . shall determine the grade of the offense." It follows that the legislature intended to do away with "the cumbersome charging procedure of treating each offense separately" and instead "substituted the present procedure, where the persistent violator may be prosecuted as a felon if the charges for the service obtained . . . exceed $500." Dissent at 727-28.

We disagree. We do not take such an expansive view of the amendment. As it has done with many other theft-type crimes in ch. 943, Stats., the legislature, by adding the language to sec. 943.45, simply decided that where the illegally obtained property or service has a value in excess of $500, the defendant will be subject to an increased penalty for committing the offense. *See* secs. 943.20(3)(b) (theft), 943.212 (fraud on hotel or restaurant keeper), 943.34(1) (receiving stolen property), 943.395(2) (making fraudulent insurance claims), 943.41(8) (credit card crimes), 943.50(4) (retail theft), 943.61(5) (theft of library material), and 943.62(4) (unlawful receipt of payments to obtain a loan for another person), Stats. The amendment did not, in our view, change the nature and structure of the punished offense; it did no more than increase the penalty for the more serious violation.

720

## II. Other Wrongs Evidence

The state, pursuing its case against Davis for fraudulently obtaining telephone service, sought to introduce evidence of eight prior instances in which Davis had obtained goods or services without paying for them. The trial court granted the state's request with respect to two such incidents in which she had obtained or retained goods by misrepresenting her identity, and it denied the request with respect to the other incidents because they simply involved Davis obtaining goods and not paying for them and thus lacked the element of active misrepresentation or misidentification.

The challenged testimony concerns two incidents. In one, an employee of a door-to-door vacuum cleaner sales organization testified that when he went to Davis's house to reclaim a machine sold to her after she had been unable to secure financing, she lied about her identity—telling him she was only a babysitter, and that Davis was not at home. In the second, an employee of a radio-television dealer testified that when she attempted to secure the return of a rental video recorder, Davis stated that her cousin, Lee Al Sharaah, had taken the recorder to California and was going to ship it back to Wisconsin at some later time.[3]

Section 904.04(2), Stats., allows the admission of otherwise inadmissible character evidence if it is offered not to show that the defendant acted in conformance with a particular character trait, but rather to show, among other things, intent, preparation, plan or motive. The trial court allowed the above evidence as pertaining

---

[3]As may be seen in the caption to the case, Lee Al Sharaah is the name by which Leola Davis is presently known.

to identity, plan and motive, and Davis claims this was error.

The state agrees that the evidence was not admissible for the specific purposes identified by the trial court, but it claims that it was admissible to prove Davis's intent to defraud—a disputed element in the case. We may, of course, affirm a trial court's determination if the court was right in deciding as it did, if for the wrong reasons. *State v. Alles,* 106 Wis. 2d 368, 391-92, 316 N.W.2d 378, 388-89 (1982). And in *State v. Truax,* 151 Wis. 2d 354, 359, 444 N.W.2d 432, 435 (Ct. App. 1989), we stated that "[w]e may sustain the trial court's holding on a theory not presented to it, and it is inconsequential whether we do so *sua sponte* or at the urging of a respondent."

The admission or rejection of evidence is within the trial court's discretion. *State v. Seigel,* 163 Wis. 2d 871, 881, 472 N.W.2d 584, 588 (Ct. App. 1991).

> [T]o determine whether the trial court properly exercised its discretion in a particular matter, we look first to the court's on-the-record explanation of the reasons underlying its decision. And where the record shows that the court looked to and considered the facts of the case and reasoned its way to a conclusion that is (a) one a reasonable judge could reach and (b) consistent with applicable law, we will affirm the decision even if it is not one with which we ourselves would agree. *Burkes v. Hales,* 165 Wis. 2d 585, 590, 478 N.W.2d 37, 39 (Ct. App. 1991).

After disallowing the bulk of the other wrongs evidence offered by the state—allowing only evidence of two prior occasions where Davis misrepresented her identity to persons seeking the return of goods she had

acquired from them without paying, the trial court explained its reasons for that determination, emphasizing the similarity of Davis's conduct in both the prior instances and the present criminal proceeding—misrepresenting her identity to gain or retain possession of unpaid-for goods or services. The court stated at one point:

> [F]or the defendant to . . . lie about her identity [in the past instances] I think has a similarity to the situation we have here. A willingness to lie about who you are in this . . . incident bares [sic] upon whether or not the defendant would be willing to lie . . . in giving the name Cheryl Sloan, S & L Associates.

We are satisfied from the record that the trial court exercised discretion in allowing the evidence. The question is whether its decision comports with the applicable law and was one a reasonable judge could reach. *Burkes,* 165 Wis. 2d at 590, 478 N.W.2d at 39.

As we have noted, we disagree with the trial court's classification of the evidence as bearing on "identity, scheme . . . plan and motive." We believe, however, that the evidence was relevant on the issue of Davis's intent to defraud. The challenged testimony established that on two prior occasions Davis attempted to retain possession of unpaid-for merchandise by misrepresenting her identity to the sellers. She claimed in this case that no fraud was involved in obtaining the telephone services—that she had authority to open the two accounts in the names of Cheryl Sloan and S. & L. Financial. And the challenged evidence is relevant to her intent in this case: that when she ordered the telephone services in other names she did so not as the agent for those named, but with the

same intent to deceive the vendor and gain goods or services without paying for them.

In this light, the situation is similar to that faced by the court in *Lehmann v. State,* 39 Wis. 2d 619, 159 N.W.2d 607 (1968), where the defendant was charged with theft by fraud when he obtained several head of cattle, promising to pay for them on the following day and failing to do so. To rebut the defense that a third party, not the defendant, was responsible for making the payment, the state was permitted to present evidence of two prior incidents in which the defendant obtained cattle on an unfulfilled promise of payment on grounds that the earlier incidents were "highly probative on the difficult to prove element of intent." *Id.* at 626-28, 159 N.W.2d at 611-12.

■■

Even if relevant, however, other wrongs evidence is not admissible unless its probative value outweighs the danger of any prejudice to the defendant's case that might flow from its admission. *See State v. Hall,* 103 Wis. 2d 125, 143, 307 N.W.2d 289, 297 (1981).

■■

The trial court correctly recognized that the danger of admitting such evidence is that the jury might believe that if a person has engaged in wrongful conduct in the past, it is likely that he or she also did so in the case at hand. Then, after discussing the similarities between the prior incidents and the evidence in the present case, the court concluded that the relevance of the evidence as to those acts "clearly outweighs any prejudice that might accrue [to] the defendant" from its admission. Thus, the trial court exercised discretion in striking the balance between probative value and possible prejudice, and we cannot say on this record that its decision was unreasonable. The evidence was not inflammatory; indeed, the

trial court had previously characterized it as "very dry and boring." The state points out, too, that any possible prejudicial effect was substantially ameliorated by evidence that Davis returned the merchandise to the vendors shortly after they came looking for it. We see no error.

*By the Court.*—Judgment affirmed.

SUNDBY, J. *(dissenting).* The court's construction of sec. 943.45, Stats., makes subsection (4) meaningless. However, we are to construe a statute so as not to render any part of it superfluous, if such construction can be avoided. *State v. Eichman,* 155 Wis. 2d 552, 560, 456 N.W.2d 143, 146 (1990). I conclude that the statute can be construed so that subsection (4) is not rendered superfluous. Such a construction requires that we reverse the judgment.

Subsection (1) of sec. 943.45, Stats. (1989-90), lists ways in which a person may attempt to obtain telecommunications service by fraud. Subsection (3) provides:

> Whoever violates this section is guilty of:
>
> (a) A Class A misdemeanor, if the charges for the service obtained, or attempted to be obtained, do not exceed $500.
>
> (b) A Class E felony, if the charges for the service obtained, or attempted to be obtained, exceed $500.[1]

Count I of the information alleged that between October 8, 1985, and February 3, 1986, Davis fraudulently obtained telephone services in the amount of

[1]Sections 3618c and 3619c, 1991 Wis. Act 39, amended sec. 943.45(3)(b), Stats., so that fraudulently obtaining, or attempting to obtain, telecommunications services in excess of $1,000 constitutes a felony.

$6,647.71 through an account she opened in the name of Cheryl Sloan. Count II alleged that Davis fraudulently obtained telephone services between November 19, 1985, and March 11, 1986, in the amount of $968.34 through an account she opened in the name of S. & L. Financial Consultants. I cannot disagree with the court's opinion that Counts I and II are not "identical in law and fact." *State v. Tappa*, 127 Wis. 2d 155, 162, 378 N.W.2d 883, 886 (1985). Therefore, if sec. 943.45, Stats., stopped at subsection (3), Davis would be guilty of two Class E felonies.

We cannot, however, repeal subsection (4) of sec. 943.45, Stats., by judicial construction. Subsection (4) provides:

> *When there has been more than one unlawful obtaining,* or attempt to obtain, by an offender, the aggregate of the charges for the telecommunications service unlawfully obtained, or attempted to be obtained, shall determine the grade of the offense. [Emphasis added.]

Plainly, Davis obtained telephone service by "more than one unlawful obtaining." Because the aggregate of charges for the service she obtained exceeds $500, under subsection (3) she is guilty of a felony. However, by not giving effect to subsection (4), the trial court and this court permit Davis to be charged with, and convicted of, two felonies.

The plain language of subsection (4) is contrary to this result. The legislature has provided that in cases involving more than one "unlawful obtaining," the aggregate value of the charges for the telecommunications service obtained determines whether the offender will be charged with a misdemeanor or a felony, not

726

whether the offender will be charged with more than one misdemeanor or more than one felony.

What if Davis had obtained telephone services for which the charges were less than $500 on each count for which she is charged? Would the court allow the prosecutor to aggregate those service charges and charge Davis with a felony, or would it require that she be charged with two Class A misdemeanors? I submit that the legislature intended to permit the state to charge an offender under such circumstances with the more serious crime.

Section 943.45, Stats., was created by ch. 248, Laws of 1961 to read:

> Whoever with intent to defraud obtains or attempts to obtain telecommunications service by any of the following means may be fined not more than $100 or imprisoned not more than 30 days, or both:
> (1) Charging such service to an existing telephone number or credit card number without the consent of the subscriber thereto or the legitimate holder thereof.
> (2) Charging such service to a false, fictitious, suspended, terminated, expired, canceled or revoked telephone number or credit card number.

Section 943.45, Stats., was repealed and recreated by ch. 489, Laws of 1963, to read substantially as does the present statute. Under the 1961 version, obtaining telecommunications service by fraud was a misdemeanor. Each unlawful act was a separate offense. I conclude that the legislature recognized that the 1961 law was ineffective in dealing with the offender who repeatedly violated the statute. The 1961 version of the statute required the cumbersome charging procedure of treating each offense separately and prosecuting each as a misde-

meanor. In place of this cumbersome procedure, the legislature substituted the present procedure, where the persistent violator may be prosecuted as a felon if the charges for the service obtained, or attempted to be obtained, exceed $500.

The nature of the proscribed conduct lends itself to a legislative determination that the allowable unit of prosecution shall be a course of conduct in which the offender, by a series of acts, obtains telecommunications service by fraud. Each attempt, successful or unsuccessful, is likely to involve a relatively small charge for the service obtained or attempted to be obtained. Therefore, it was sensible for the legislature to prescribe punishment based upon the aggregate value of the charges for the service unlawfully obtained or attempted to be obtained. Further, because each attempt typically involves a relatively small charge, it was sensible to avoid the cumbersome procedure of multiple prosecutions where the offender is accused of numerous attempts to unlawfully obtain such service.

Finally, for the reasons expressed, it would be inappropriate for the legislature to prescribe multiple punishments for the conduct. In fact, the repeal and recreation of the 1961 law shows that the legislature concluded it was inappropriate to provide multiple punishments for the conduct proscribed by the statute.

For these reasons, I conclude that the legislature intended that the allowable unit of prosecution under sec. 943.45, Stats., shall be the course of conduct of obtaining telecommunications service by fraud. I do not, however, conclude that there is no temporal component which the state may consider in charging under sec. 943.45. A statute must be construed to avoid an unreasonable result. In this case, however, the telephone ser-

vices were obtained by Davis at the same address over periods of time which substantially overlapped.

Finally, I consider the appropriate remedy. Davis argues that the charges against her should be dismissed. I disagree. I conclude that the appropriate remedy is a remand for resentencing, with directions that the state dismiss one count to avoid the multiplicity.

In *U.S. v. Saks,* 964 F.2d 1514 (5th Cir. 1992), defendants were impermissibly convicted on several counts for committing several acts in furtherance of a single scheme to defraud. They argued that the decision in *U.S. v. Lemons,* 941 F.2d 309 (5th Cir. 1991), required that the court reverse and dismiss all of their bank fraud convictions. The court disagreed: "We have explained that 'multiplicity addresses double jeopardy; and where the jury is allowed to return convictions on multiplicitous counts, the remedy is to remand for resentencing, with the government dismissing the counts that create. the multiplicity.' " *Saks,* 964 F.2d at 1526 (quoting *U.S. v. Moody,* 923 F.2d 341, 347–48 (5th Cir.), *cert. denied,* 112 S.Ct. 80 (1991)). I conclude that the same remedy should be applied in this case.